UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


WILLIAM SIMS,

                    Plaintiff,

vs.

                                        Case No. 3:18-cv-922-J-39JBT

ALEXIS FIGUEROA, etc.; et al.,

                    Defendants.
_____


**<u>ORDER</u>**

**I.  Status**

        Plaintiff, an inmate of the Florida Department of Corrections
(FDOC), is proceeding pro se on a Complaint (Complaint) (Doc. 1)
pursuant to 42 U.S.C. § 1983.  Defendant, Dr. Colombani's Motion to
Dismiss Complaint *With Prejudice* (Doc. 9) and Defendant, Dr.
Figueroa's Motion to Dismiss Complaint *With Prejudice* (Doc. 13) are
pending before the Court.[1]  Plaintiff filed a Declaration in
Opposition to Defendant's [Colombani] Motion to Dismiss Complaint
With Prejudice (Doc. 16) and a Declaration in Opposition to
Defendant Figueroa's Motion to Dismiss Complaint (Doc. 22).  <u>See</u>
Order (Doc. 5).  For its review, the Court accepts the facts in the

_____

        [1] In this opinion, the Court references the document and page
numbers designated by the electronic filing system.

Complaint as true and views them in the light most favorable to the Plaintiff.[2]

## II.  Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

This Court noted:

> In deciding a motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Christopher v.

---

[2]  In considering the motions, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted).  As such, the recited facts are drawn from the Complaint and may differ from those that ultimately can be proved.

> *Harbury*, 536 U.S. 403, 406, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted); *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc ). To satisfy the pleading requirements of Fed.R.Civ.P. 8, a complaint simply must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). The Court need not accept unsupported conclusions of law or of mixed law and fact in a complaint. *Marsh*, 268 F.3d at 1036 n. 16.

*Hatten v. Davis*, No. 203CV114FTM29DNF, 2005 WL 3186183, at *1 (M.D. Fla. Nov. 29, 2005).

Furthermore, a district court, in undertaking its review, "is limited to the pleadings and any attachments thereto in ruling on the motion to dismiss." *Id*. at *2. Thus, in its review of a motion to dismiss, a court excludes from consideration documents not previously submitted with the complaint unless the documents are referred to in the complaint, are central to the case, and are undisputed (the authenticity of the document is not challenged). *Harvin v. JP Morgan Chase Bank, N.A.*, No. 1:15-CV-04477-MHC-JFK, 2016 WL 9450467, at *5 (N.D. Ga. June 28, 2016), *report and recommendation adopted by* 2016 WL 9453333 (N.D. Ga. Aug. 1, 2016), *aff'd*, 696 F. App'x 987 (11th Cir. 2017). The court may, however, take judicial notice of public filings, public records, and court filings. *Id*.

When analyzing these motions to dismiss, the Court will consider the Complaint and the documents attached to the Complaint. The Court will not convert the motions to dismiss into a motions for summary judgment and will exclude consideration of any documents not meeting the above standards. <u>See</u> Rule 12(d), Fed. R. Civ. P. The Court's inquiry at this stage is focused upon whether the Complaint gives Defendants fair notice of the claim and the grounds upon which it rests. <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (per curiam). As to whether Plaintiff has failed to state a claim upon which relief can be granted, this assertion "merely tests the sufficiency of the complaint; it does not decide the merits of the case." <u>Harvin</u>, 2016 WL 9450467, at *5 (quotation and citations omitted).

Based on the above, the Court will consider the pending motions as 12(b)(6) motions for failure to state a claim and will limit its analysis and ruling accordingly.

### III. The Complaint

Plaintiff claims Defendants Dr. Colombani and Dr. Figueroa subjected him to cruel and unusual punishment in violation of the Eighth Amendment by denying and delaying the provision of medical care. Complaint at 5. Plaintiff seeks injunctive relief against Defendant Figueroa and compensatory and punitive damages from Defendants Figueroa and Colombani. <u>Id</u>. at 7-8.

Plaintiff alleges the following facts. On February 16, 2017, an outside medical specialist at the brace clinic saw Plaintiff and determined Plaintiff needed replacement arch supports and orthopedic boots. Id. at 5. Dr. Colombani was aware of Plaintiff's left foot deformity and knew Plaintiff needed to be returned to the clinic to be fitted for custom-made arch supports and boots. Id. On August 1, 2017, Dr. Colombani made a consultation request for a referral to an outside specialist. Id. However, the request was not submitted and an appointment was not scheduled. Id.

Dr. Figueroa saw Plaintiff on September 8, 2017 for a medical appointment. Id. at 6. Plaintiff told Dr. Figueroa of the need to be returned to an outside specialist to be evaluated for custom arch supports and boots as Plaintiff had been wearing severely worn and torn boots for eighteen months. Id. Dr. Figueroa told Plaintiff he would address the matter at a later date. Id. After waiting nearly three months, Plaintiff wrote an inmate grievance on December 12, 2017. Id. Plaintiff received a grievance response stating that his medical chart would be placed in Dr. Figueroa's box for review and a possible new consultation for the brace clinic. Id.

In April of 2018, during a chronic clinic appointment, Plaintiff asked Dr. Figueroa about returning to an outside specialist. Id. Dr. Figueroa said it would be easier and less

expensive if he were to order boots himself and issue regular insoles. <u>Id</u>. Dr. Figueroa issued Plaintiff a pass for insoles. <u>Id</u>. Plaintiff mentioned the pain and discomfort he was experiencing, the Dr. Figueroa said money was not available right now. <u>Id</u>. Dr. Figueroa did not refer Plaintiff to an outside specialist. <u>Id</u>.

In July of 2018, during a sick-call visit, Plaintiff was advised regular boots had been ordered. <u>Id</u>. at 7. Plaintiff experienced pain and discomfort "because money was an issue." <u>Id</u>.

Attached to the Complaint are a number of documents that are relevant for this Court's review. The record demonstrates that on December 12, 2017, while confined at Suwannee Correctional Institution (SCI), Plaintiff wrote a Request for Administrative Remedy or Appeal (Doc. 1-1 at 1) to the Warden. Plaintiff complained he had been denied medical treatment since February 26, 2017, after being seen in the brace clinic by Mr. Lang. <u>Id</u>. Plaintiff stated he was to be returned to the clinic to be re-fitted for orthotics and to obtain replacement of orthopedic boots. <u>Id</u>. Plaintiff complained he had not received the consultation for approximately ten months. <u>Id</u>.

In response, on December 27, 2017, F. Cruz, M.D., approved the grievance and stated:

> You were seen in Chronic Clinic by MD in Oct. and discussed your brace needs. It does appears [sic] a Consult was written in July by your previous facility that has not been

> completed. Your chart has been placed in the
> MD's box for further review of this matter and
> possible new consult for brace. You will be
> notified when this has been completed.

(Doc. 1-1 at 2).

On January 22, 2018, Plaintiff wrote a Request for Administrative Remedy or Appeal to the Warden, reiterating that he had been sent to the brace clinic at RMC on February 16, 2017, and was due to be returned to the clinic for fittings. (Doc. 1-1 at 3). Plaintiff stated he had been transferred to Hamilton Correctional Institution (HCI) on March 14, 2017, but a consultation for the brace clinic was not completed at that institution. Id. Plaintiff said upon his arrival at SCI, he told Dr. Figueroa of Plaintiff's need to return to the brace clinic because his boots were worn out and he needed custom-made orthotics for his left-foot deformity. Id. A consultation was not completed. Id. Plaintiff provided a copy of the December 27, 2017 approved grievance. Id. Plaintiff noted, Dr. Figueroa wrote in Plaintiff's medical file that Dr. Campbell of the Regional Office was contacted and denied Plaintiff's return to the brace clinic. Id. Plaintiff said he has received treatment at the brace clinic and has been given orthopedic boots since 2006, long before Centurion took over medical services for the FDOC, and he should not be told to wear Crocs. Id. at 3-4.

In response, on January 26, 2018, F. Cruz, M.D., denied the grievance noting the previous grievance was approved only on the

basis that the doctor would review Plaintiff's chart for possible referral to the brace clinic. (Doc. 1-1 at 5). Dr. Cruz stated: "The chart was placed to the MD and he reviewed the information and further discussed the matter with the Regional Medical Directory [sic], Dr. Campbell, which is an appropriate measure." Id. Additionally, it was noted that Plaintiff was not recommended to wear Crocs, and "it's noted that DOC provide low heel shoes." Id.

On February 1, 2018, Plaintiff filed a grievance appeal to the Secretary of the FDOC, noting that a consult to the brace clinic was allegedly filled out in July of 2017, but not submitted. (Doc. 1-1 at 6). Additionally, he said that he was not sent to the clinic from SCI. Id. Finally, Plaintiff stated that his primary health care provider had a phone conversation with a physician from the Regional Office, and a determination was made that Plaintiff should wear FDOC low-heeled shoes. Id. Plaintiff asserted that he should have been sent to the brace clinic based on his February 16, 2017 appointment at the clinic. Id. at 7. Plaintiff sought to be returned to the brace clinic to be fitted with custom made arch supports and to receive replacement orthopedic boots. Id. On June 14, 2018, staff denied the appeal, noting Plaintiff was seen by the provider on May 29, 2017 to address these concerns. (Doc. 1-1 at 8).

Plaintiff wrote another grievance appeal to the Secretary asking that his medical grievance be returned to the institution

and be properly investigated. (Doc. 1-1 at 9). Staff returned the appeal without action on May 21, 2018. Id. at 10.

On February 6, 2018, Plaintiff wrote a grievance to the Warden, stating he met with Dr. Figueroa and was told a consult would be completed, but this did not happen. (Doc. 1-1 at 12). Plaintiff sought his return to the brace clinic for fittings. Id. On February 26, 2018, F. Cruz, M.D., denied the grievance stating:

> There is no indication that you have been denied access to medical or denied medical care. This matter was addressed in formal grievance number 1801-231-092. It is the responsibility of your health care staff to determine the appropriate treatment regimen for the condition you are experiencing, including specialty consults, medication prescriptions, diagnostic testing, lab work, or passes. You may address your concerns with the MD at your next CIC. You can also access sick call to address your medical needs and concerns.

Id. at 13.

Finally, on March 21, 2018, Plaintiff again appealed to the Secretary. (Doc. 1-1 at 14-15). He complained of pain and discomfort for over a year due to not having "essential footwear." Id. at 15. He also stated Dr. Figueroa was aware of Plaintiff's medical issue but was unwilling to render medical care. Id. On May 15, 2018, the appeal was returned without action because Plaintiff's complaint had been addressed in a previous formal grievance and the subsequent grievance should have been documented as returned without action, not as denied. (Doc. 1-1 at 16).

## IV.  Law and Conclusions

In its review, the Court will liberally construe Plaintiff's Complaint.  To begin, in order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted).

## DR. COLOMBANI

### A.  Exhaustion of Administrative Remedies

Defendant Dr. Colombani asserts Plaintiff failed to exhaust his administrative remedies.  The Prison Litigation Reform Act (PLRA) provides that no action may be brought with respect to prison conditions pursuant to 42 U.S.C. § 1983 until the inmate has exhausted available administrative remedies. 42 U.S.C. § 1997e(a). This provision was adopted to afford corrections officials with the time and opportunity to address complaints before the initiation of a civil rights action.  Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1214-15 (11th Cir. 2015).  Thus, the exhaustion requirement under the PLRA is "a precondition to an adjudication on the merits" and is mandatory under the PLRA.  Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir.), cert. denied, 555 U.S. 1074 (2008).

Although failure to exhaust is an affirmative defense, it is not jurisdictional. Woodford v. Ngo, 548 U.S. 81, 101 (2006). It is to be raised in an unenumerated motion to dismiss under Rule 12(b), Fed. R. Civ. P. Defendant Dr. Colombani, in his Motion, raises the affirmative defense of exhaustion.

Plaintiff prevailed on his grievance; therefore, there was nothing for him to appeal. (Doc. 1-1 at 1-2). Thus, Plaintiff did not fail to exhaust his administrative remedies and Colombani's Motion, based on failure to exhaust, is due to be denied.

**B.   Failure to State a Cause of Action**

The Eighth Amendment is interpreted as prohibiting deliberate indifference to serious medical needs of prisoners. Estelle v. Gamble, 429 U.S. 97, 102 (1976). Plaintiff, at the time of the alleged deprivation, was a convicted prisoner confined in the FDOC. Therefore, his rights arise under the Eighth Amendment of the United States Constitution:

> The Eighth Amendment's prohibition against "cruel and unusual punishments" protects a prisoner from "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To state a claim of unconstitutionally inadequate medical treatment, a prisoner must establish "an objectively serious [medical] need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000).

Kuhne v. Fla. Dep't of Corr., 745 F.3d 1091, 1094 (11th Cir. 2014).

Also of import, "[a] serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition." <u>Mann v. Taser Int'l, Inc.</u>, 588 F.3d 1291, 1307 (11th Cir. 2009) (quoting <u>Hill v. Dekalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1187 (11th Cir. 1994), <u>overruled in part on other grounds by Hope v. Pelzer</u>, 536 U.S. 730 (2002)).

To demonstrate deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry. <u>See</u> <u>Brown v. Johnson</u>, 387 F.3d 1344, 1351 (11th Cir. 2004) (citation omitted). To establish deliberate indifference to a serious medical need, Plaintiff must shoulder three burdens; he must satisfy the objective component (showing he had a serious medical need), the subjective component (showing the official acted with deliberate indifference to his serious medical need), and causation (showing the injury was caused by the Defendant's wrongful conduct). <u>Mann</u>, 588 F.3d at 1306-07. In order to prove the subjective component, a plaintiff is required to demonstrate: (1) the official's subjective knowledge of a risk of serious harm; (2) the official's disregard of that risk; (3) by conduct that is more than mere negligence. <u>Daniels v. Jacobs</u>, 753 F. App'x 748, 757 (11th Cir. 2018) (per curiam); <u>Richardson</u>, 598 F.3d at 737

(citation omitted) (same).  <u>See</u> <u>Nam Dang, by and through Vina Dang</u>
<u>v. Sheriff, Seminole Cty. Fla.</u>, 871 F.3d 1272, 1280 (11th Cir.
2017) (finding a pretrial detainee must prove these three factors
to establish deliberate indifference); <u>McLeod v. Sec'y, Fla. Dep't</u>
<u>of Corr.</u>, 679 F. App'x 840, 843 (11th Cir. 2017) (per curiam) (same
for a state prisoner).

A plaintiff must demonstrate that a defendant's responses to
the plaintiff's medical needs were poor enough to constitute an
unnecessary and wanton infliction of pain, and not merely
accidental inadequacy, negligence in treatment, or even medical
malpractice actionable under state law.  <u>Taylor v. Adams</u>, 221 F.3d
1254, 1258 (11th Cir. 2000) (citing <u>Estelle</u>, 429 U.S. at 105-106),
<u>cert</u>. <u>denied</u>, 531 U.S. 1077 (2001).  It is important to recognize,

> "medical care which is so cursory as to amount
> to no treatment at all may amount to
> deliberate indifference." <u>Mandel v. Doe</u>, 888
> F.2d 783, 789 (11th Cir. 1989) (citations
> omitted). However, medical treatment violates
> the Constitution only when it is "so grossly
> incompetent, inadequate, or excessive as to
> shock the conscience or to be intolerable to
> fundamental fairness." <u>Rogers v. Evans</u>, 792
> F.2d 1052, 1058 (11th Cir. 1986) (citation
> omitted).

<u>Nam Dang, by and through Vina Dang</u>, 871 F.3d at 1280.

In the prison context, the Court has to consider whether the
matter is one of professional medical judgment.  <u>Beard v. Banks</u>,
548 U.S. 521, 530 (2006).  If it is a matter of professional
judgment, for example a decision not to pursue a particular course

of diagnosis or treatment, it does not represent cruel and unusual punishment. <u>Estelle</u>, 429 U.S. at 107-108. Similarly, a dispute over adequacy of treatment sounds in tort law, not constitutional law.

Plaintiff has not alleged facts sufficient to state a claim under the Eighth Amendment in that he has not shown Dr. Colombani was deliberately indifferent. Upon review of the Complaint and the documents attached to the Complaint, Plaintiff was seen by Mr. Lang at the brace clinic on February 16, 2017, and he determined Plaintiff needed to replace his arch supports and orthopedic boots. Thereafter, on March 14, 2017, Plaintiff was transferred to HCI, but the consultation was not completed at that institution. The record demonstrates that while confined at SCI, Plaintiff wrote a grievance to the Warden on December 12, 2017, which was responded to by Dr. Cruz, and Dr. Cruz said Dr. Colombani had written the consultation back in July of 2017, but it had not been completed, so Plaintiff's chart would be placed in the current doctor's box at SCI.

The record demonstrates Dr. Colombani completed a consultation request. Thus, Dr. Colombani did not disregard Plaintiff's medical condition. Although Dr. Colombani did not immediately write a consultation after Plaintiff's visit to the brace clinic, a serious medical need is determined by whether a delay in treating the need worsens the condition. Here, there is no allegation that

14

Plaintiff's foot condition worsened from February 2017 to July 2017 by wearing his previously issued arch supports and boots. "This does not rise to the level of a 'detrimental effect of delay that Plaintiff must prove.'"[3] <u>Floyd v. Jones</u>, No. 8:17-cv-01729-T-02TGW, 2018 WL 5904446, at *4 (M.D. Fla. Nov. 9, 2018).

Here, Plaintiff is complaining about the adequacy and frequency of treatment, a matter which sounds in tort law, not constitutional law. At most, the gap between the brace clinic visit and Dr. Colombani writing the consultation amounts to a mistake or negligence; "[a]ccidents, mistakes, negligence, and medical malpractice are not 'constitutional violation[s] merely because the victim is a prisoner.'" <u>Harris v. Coweta Cty.</u>, 21 F.3d 388, 393 (11th Cir. 1994) (citing <u>Estelle</u>, 429 U.S. at 106). Also, any failure of the medical staff and/or brace clinic employees in not processing Dr. Colombani's Consultation Request also amounts to mere negligence or malpractice. See <u>Granda v. Schulman</u>, 372 F. App'x 79, 83 (11th Cir. 2010) (per curiam) (distinguishing medical malpractice from an Eighth Amendment violation).

---

[3] Although "suffering ongoing serious pain, in part due to lack of proper footwear for over one year," <u>Sealey v. Pastrana</u>, No. 08-23078-CIV-GOLD, 2009 WL 10699626, at *11 (S.D. Fla. Nov. 4, 2009) (Report of Magistrate Judge), may qualify as a serious medical need, Plaintiff's complaint of pain and discomfort due to wearing worn orthotics and boots for the period of five months at issue with respect to Dr. Colombani's alleged actions does not reach this threshold. Given the Court's conclusion regarding the Eighth Amendment claim against Defendant Colombani, the Court will not address the issue of physical injury and damages.

Therefore, Dr. Colombani's Motion is due to be granted. As such, the Court will dismiss Plaintiff's Eighth Amendment claim against Dr. Colombani.

## C. Qualified Immunity

Defendant Dr. Colombani contends he is immune from suit, claiming qualified immunity. Under the doctrine of qualified immunity, a defendant may claim he is entitled to qualified immunity from monetary damages in his individual capacity. It is undisputed that Dr. Colombani was engaged in discretionary functions during the events at issue. To defeat qualified immunity with respect to this Defendant, Plaintiff must show both that a constitutional violation occurred and that the constitutional right violated was clearly established. Also, Dr. Colombani was acting in his discretionary capacity as a doctor for the FDOC. The remaining question is "whether taken in the light most favorable to the party asserting the injury, do the facts alleged show that [Defendant's] conduct violated a constitutional or statutory right? If so, the second question is whether the right, be it constitutional or statutory, was clearly established." Crenshaw v. Lister, 556 F.3d 1283, 1290 (11th Cir. 2009) (per curiam) (quoting Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008)).

The Eleventh Circuit, in Sebastian v. Ortiz, 918 F.3d 1301, 1307 (11th Cir. 2019), recently opined:

> Qualified immunity shields government officials "from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). It is designed to permit officials to perform their discretionary duties "without the fear of personal liability or harassing litigation." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002). The doctrine therefore "protect[s] from suit 'all but the plainly incompetent or one who is knowingly violating the federal law.'" <u>Id</u>. (quoting <u>Willingham v. Loughnan</u>, 261 F.3d 1178, 1187 (11th Cir. 2001), <u>vacated</u> 537 U.S. 801, 123 S.Ct. 68, 154 L.Ed.2d 2 (2002)). Because qualified immunity protects officials from suit as well as liability, courts must determine the validity of a claimed qualified immunity defense at the earliest possible time. <u>Id</u>.

To deny qualified immunity at the motion to dismiss stage, we must conclude both that the allegations in the complaint, accepted as true, establish a constitutional violation and that the constitutional violation was "clearly established." <u>Keating v. City of Miami</u>, 598 F.3d 753, 762 (11th Cir. 2010). For these purposes, clearly established law consists of holdings of the Supreme Court, the Eleventh Circuit, or the highest court of the relevant state. <u>See</u> <u>Jenkins v. Talladega City Bd. of Educ.</u>, 115 F.3d 821, 826 n.4 (11th Cir. 1997). A "public official 'must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred'" to receive the benefit of qualified immunity. <u>Lee</u>, 284 F.3d at 1194 (quoting <u>Courson v. McMillian</u>, 939 F.2d 1479, 1487 (11th Cir. 1991)).

There is no doubt that the constitutional right not to be subjected to cruel and unusual punishment by the delay and deprivation of medical care was clearly established at the time of

the incidents in question.  Upon review of the Complaint and the attachments thereto, however, Plaintiff has not presented sufficient allegations to present an Eighth Amendment claim against Dr. Colombani that withstands Colombani's Motion, although the constitutional rights at issue were clearly established.  Given the undersigned's conclusion that the Defendant's motion should be granted, and based on the state of the law on qualified immunity in the Eleventh Circuit, qualified immunity should be granted as to Defendant Colombani.

**D.  Eleventh Amendment Immunity**

Insofar as Plaintiff may be seeking monetary damages from Defendant Colombani in his official capacity, the Eleventh Amendment bars suit.  <u>Zatler v. Wainwright</u>, 802 F.2d 397, 400 (11th Cir. 1986) (per curiam) (finding the Secretary of the FDOC immune from suit in his official capacity).  Thus, Colombani's Motion is due to be granted as to Plaintiff's claim for monetary damages against Defendant Dr. Colombani in his official capacity.

**DR. FIGUEROA**

**A.   Failure to State a Claim**

Plaintiff raises a claim of deliberate indifference against Dr. Figueroa for denial and delay of medical care.  In short, for an Eighth Amendment deliberate indifference claim, Plaintiff must present facts showing he had a serious medical need (the objective prong).  <u>Brown</u>.  Next, he must demonstrate the medical provider

acted with a state of mind that constituted deliberate indifference (the subjective prong). <u>Richardson</u>, 598 F.3d at 737. Under the subjective prong, there must be a showing that the medical provider had subjective knowledge of a risk of serious harm yet disregarded that risk in a way that amounts to more than mere negligence. <u>Daniels</u>. For liability to attach, the plaintiff is required to show an affirmative causal connection between the defendant's alleged actions and the resulting injury. <u>LaMarca v. Turner</u>, 995 F.2d 1526, 1538 (11th Cir. 1993) ("Section 1983 thus focuses [the] inquiry on whether an official's acts or omissions were the cause- not merely a contributing factor-of the constitutionally infirm condition."), <u>cert</u>. <u>denied</u>, 510 U.S. 1164 (1994). But, a demonstration of negligence or mere oversight is insufficient to support an Eighth Amendment claim under 42 U.S.C. § 1983. <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003).

With regard to Dr. Figueroa, Plaintiff is essentially complaining about a decision not to pursue a particular course of treatment: Plaintiff's return to the brace clinic for a fitting for arch supports and for replacement of orthopedic boots. Although Plaintiff asserts Dr. Figueroa was unwilling to render medical care, when Dr. Figueroa checked with Dr. Campbell of the Regional Office, Dr. Campbell denied Plaintiff's return to the brace clinic for arch support fittings and orthopedic boot replacement. Dr. Campbell, the Regional Medical Director of the

FDOC, denied permission for Plaintiff to return to the clinic and referenced low-heeled shoes. After assessment, however, Dr. Figueroa decided to order boots for Plaintiff and issue insoles to accommodate Plaintiff's left foot deformity. Thereafter, Dr. Figueroa issued a medical pass for the insoles and the boots were placed on order.

Plaintiff complains that he should have been referred to an outside specialist and returned to the clinic to be refitted for arch supports and to be provided with orthopedic boots. First of all, Dr. Campbell denied Plaintiff's return to the brace clinic and decided low heel shoes were sufficient for Plaintiff's condition. To address Plaintiff's medical needs and lessen Plaintiff's pain and discomfort, Dr. Figueroa ordered boots and issued a pass for insoles. The issue of whether an additional form of treatment was indicated, "is a classic example of a matter for medical judgment." Estelle, 429 U.S. at 107. As such, this type of medical decision, to recommend low-heeled footwear and provide boots and insoles rather than directing a referral to a specialist to fit Plaintiff for arch supports and boots, is, at most, medical malpractice, and certainly does not constitute cruel and unusual punishment. Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[T]he question of whether [defendant] should have employed additional diagnostic techniques or forms of treatment [or referred a patient to a different specialist] 'is a classic example of a matter for medical

judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (citation omitted).

Here, Dr. Campbell, the Regional Medical Director, overrode any recommendation made by Mr. Lang that Plaintiff be returned to the brace clinic. Dr. Campbell decided the arch supports and orthopedic boots were not medically necessary. Although Mr. Lang or others in the brace clinic may have come to a different conclusion, "a simple difference in medical opinion as to [plaintiff's] diagnosis or course of treatment" does not support a claim of cruel and unusual punishment against Dr. Figueroa. Harris, 941 F.2d at 1505 (citation omitted). Thus, Plaintiff's interaction with Dr. Figueroa does not rise to the level of a federal constitutional violation and solely amounts to a difference in medical opinion.

Dr. Figueroa did not disregard Plaintiff's medical condition or delay consideration of Plaintiff's medical complaint. Plaintiff had several consultations with Dr. Figueroa, and Dr. Figueroa followed up on those consultations. He contacted Dr. Campbell, and Dr. Campbell denied Plaintiff's request for return to the brace clinic for fittings and replacements. To address Plaintiff's complaint of pain and discomfort, Dr. Figueroa took it upon himself to order boots and issue a medical pass for insoles. Thus, a medical assessment was undertaken, recommendations made, boots

ordered, and insoles provided.[4]  Although there may have been a difference in medical opinion, a medical decision not to return Plaintiff to the brace clinic or make a particular referral does not represent cruel and unusual punishment.  Given the Court's conclusion regarding the Eighth Amendment claim against Defendant Figueroa, the Court will not address the issue of physical injury and damages.

Therefore, based on the above, Dr. Figueroa's Motion is due to be granted, and the Court will dismiss Plaintiff's claims against Dr. Figueroa.

## B.  Qualified Immunity

Defendant Dr. Figueroa contends he is immune from suit, claiming qualified immunity from monetary damages in his individual capacity.  It is not disputed that Dr. Figueroa was engaged in discretionary functions during the events at issue.  To defeat qualified immunity with respect to Dr. Figueroa, Plaintiff must show both that a constitutional violation occurred and that the constitutional right violated was clearly established.

Upon review, Dr. Figueroa was acting in his discretionary capacity as a doctor for the FDOC.  The right was clearly

---

[4] Although the Regional Director denied Plaintiff's return to the brace clinic, Dr. Figueroa medically assessed Plaintiff's needs and issued a pass for insoles and ordered boots, deciding this would be the easiest path to provide relief for Plaintiff's expressed pain and discomfort, and prescribing significantly more than just low heels.

established. The remaining question is, whether taken in the light most favorable to Plaintiff (the person asserting injury), do the facts alleged show Dr. Figueroa's conduct violated an Eighth Amendment right?

As previously stated, the constitutional right not to be subjected to cruel and unusual punishment by the delay and deprivation of medical care was clearly established at the time of the incidents in question. Upon review of the Complaint and the attachments thereto, however, Plaintiff has not presented sufficient allegations to present an Eighth Amendment claim against Dr. Figueroa that withstands Figueroa's Motion. Given the undersigned's conclusion that the Defendant's Motion should be granted, and based on the state of the law on qualified immunity in the Eleventh Circuit, qualified immunity should be granted as to Defendant Figueroa.

## C. Eleventh Amendment Immunity

Insofar as Plaintiff may be seeking monetary damages from Defendant Figueroa in his official capacity, the Eleventh Amendment bars suit. <u>Zatler</u>. As such, Figueroa's Motion is due to be granted as to Plaintiff's claim for monetary damages against Defendant Dr. Figueroa in his official capacity.

Therefore, it is now

**ORDERED:**

1. Dr. Colombani's Motion to Dismiss Complaint *With Prejudice* (Doc. 9) is **GRANTED,** and Plaintiff's claims against Dr. Colombani are **DISMISSED**.

2. Defendant, Dr. Figueroa's Motion to Dismiss Complaint *With Prejudice* (Doc. 13) is **GRANTED,** and Plaintiff's claims against Dr. Figueroa are **DISMISSED**.

3. Defendants Dr. L. Colombani and Dr. Alexis Figueroa are **DISMISSED** from this action.

4. The **Clerk** shall enter judgment dismissing the case and terminating any pending motions.

5. The **Clerk** shall close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of July, 2019.

_____
BRIAN J. DAVIS
United States District Judge

sa 7/15
c:
William Sims
Counsel of Record